UNITED STATES

v.

Senior Airman Michael E. DONNELLY, FR 085–52–7116 United States Air Force.

ACM 23135.

U. S. Air Force Court of Military Review.

Sentence Adjudged 7 April 1981.

Decided 11 Sept. 1981.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain Richard A. Morgan.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Michael J. Hoover.

Before MILES, KASTL and MILLER, Appellate Military Judges.

## DECISION

KASTL, Judge:

We address three issues in this case.

(1) Over defense objection, the Government presented testimony during the presentencing portion of the accused's trial concerning two uncharged drug offenses; this testimony was advanced to rebut the accused's unsworn statement that he was "a fairly responsible individual." Did the military judge err in permitting such prosecution rebuttal?

(2) A pretrial agreement guaranteed that the convening authority would give "strong consideration" to designating the 3320th retraining facility at Lowry AFB, Colorado, as the place of confinement. Was the staff judge advocate's review defective in failing to meaningfully address this matter? and

(3) The sentence as announced was clear but the written sentence worksheet was ambiguous. Under the circumstances, is reassessment by the convening authority required?

### I

The accused pleaded guilty to all charges and specifications.[1] Subsequently, during his unsworn statement to the voting members, the following colloquy occurred:

DC Is there anything else that you think the court should know about you in deciding what should be done?

---

1. The accused was tried by general court-martial for dereliction of duty and larceny, violations of Articles 92 and 121, Uniform Code of Military Justice, 10 U.S.C.A. §§ 892, 921. He was found guilty and sentenced to a bad conduct discharge, six month's confinement at hard labor, forfeitures of $100.00 per month for six months, and reduction to airman basic.

A  *I'm a fairly responsible individual and have a lot of responsibility towards my family.* I'd like very much to stay in the Air Force, to be able to work, show them the value of my assets to them, that I can do something.

Q  Thank you. You may return to your seat.

(The witness returned to the counsel table.)

DC  Your Honor, excuse me. Something slipped my mind. Could I have your relief to have the accused once again take the stand—

MJ  Certainly.

DC  —for a few moments?

(The accused returned to the witness stand.)

Q  What I'm going to hand you, Airman Donnelly, is a copy of the—I'm sorry—not a balance sheet, but to show how deep a financial hole you're in at the present. Could you explain to me what your financial position is at this time.

A  At this time I'm having a fairly hard time surviving, with two babies, making the budget stretch.

Q  Well, why are you having these problems?

A  Obviously because I went into debt too much. I've got too many bills. (emphasis supplied).

Over defense objection, the trial judge allowed prosecution rebuttal evidence that the accused had used marijuana and cocaine on duty. In turn, the defense attacked the rebuttal witness' reputation for veracity.

2. Trial defense counsel objected to the military judge's interpretation that the accused's sworn statement had paved the way for rebuttal:

MJ  This Court finds that any evidence of off-duty misconduct by the accused is not admissible as proper rebuttal of either the accused's comment concerning his desire to stay in the Air Force, or his comment concerning the fact that he considers himself to be a responsible member of the United States Air Force. The prosecution will be permitted to bring in evidence of on-duty uncharged misconduct to rebut the accused's statement that he is a responsible member of the United States Air Force.

DC  Excuse me, your Honor. Can I request that the record be read back? I don't believe

At the outset, we are not convinced after reading the entire record that the accused's characterization of himself in the context of his family and his finances as "fairly responsible" opened the door to rebuttal regarding his military duty.[2] We have independently reassessed the sentence in light of this error.

## II

The staff judge advocate's review was defective because it failed to provide meaningful guidelines to aid the convening authority in designating a place of confinement.

The accused earlier had offered to plead guilty—provided the government agreed to a cap on sentencing and dismissal of two other specifications. The accused's offer further provided:

> ...(b) *Although designation of a specific place of confinement is not a part of this agreement, strong consideration,* after reviewing the record of trial, Staff Judge Advocate's Review, all matters presented as clemency material including the formal clemency evaluation and AF Forms [138] (Post-Trial Clemency Evaluation), and the mental health evaluation, *will be given to designating the initial place of confinement at 3320th CRS, Lowry AFB, Colorado.* The above reference to 3320th CRS shall not be construed in any manner to bind the Convening Authority *nor permit the accused to rely upon same* as an agreement to designate

he said he was a responsible member of the Air Force. He said, "I feel I'm fairly responsible."

MJ  Well, I wasn't attempting to quote the accused's testimony. I believe you're correct, but his statement was to the effect that "I believe that I'm fairly responsible," something to that effect. And it's the finding of this Court that evidence of misconduct while on duty as a Security Policeman in a controlled area or where his duty performance encompassed a controlled area is relevant and is probative as to his responsibility, the matter of his responsibility. Therefore, that testimony will be permitted.

the 3320th CRS *without consideration of the above matters* (emphasis supplied). The Government accepted the offer.

Following trial, the accused obtained a mental health evaluation stating he was "an excellent candidate for referral" to the 3320th. Several of the post-trial clemency evaluation documents, AF Forms 138, including those of his first sergeant, immediate supervisor, and chaplain, recommend transfer to the 3320th. Despite such promising data, the convening authority designated Fort Riley, Kansas as the place of confinement.

Pretrial agreements should specify "clearly stated action" and "must not be ambiguous . . . ." AFM 111–1, Military Justice Guide, paras 4–8d and h (2 July 1973). Weighed against such a standard, we are concerned with the ephemeral terms of this agreement. The words "strong consideration" are semantic quicksand. How might one decide their precise meaning? What degree of compliance or forthcomingness is required of the convenor? At what juncture can one objectively find a breach of compliance?

■ In any event, we read this quicksilver bargain as one offering the accused a real possibility of selection for the 3320th at Lowry AFB. As to this crucial matter, the convening authority received no useful legal analysis to assist him in an informed determination. Particularly since several of the clemency evaluations and the mental health statement supported the accused's overtures, an instructive and thorough staff judge advocate's review was required addressing the matter of what facility should house the accused. *United States v. Paule*, 8 M.J. 659, 660 (A.F.C.M.R.1980); *United States v. Powis*, 8 M.J. 809, 813 (N.C.M.R. 1980); AFM 111–1, Military Justice Guide, paragraph 7–3(e) (2 July 1973).

3. ·*United States v. Goode*, 1 M.J. 3 (C.M.A. 1975).

4. We are so advised by the Special Assistant to the Judge Advocate General for Clemency and Rehabilitation Matters.

Error occurred at the outset, when the staff judge advocate's review failed to meaningfully address the significant issue of possible designation of the 3320th. Moreover, the error was compounded when the defense called the matter to the staff judge advocate's attention[3] yet the review once again failed. *United States v. Boston*, 7 M.J. 953 (A.F.C.M.R.1979).

■ Although we find error, a new review and action becomes unnecessary because the accused, belatedly, had been offered the opportunity to enter the 3320th at Lowry AFB.[4] This moots the issue.

### III

■ Finally, the accused argues that there is an ambiguity between the sentence as announced and as recorded on the sentence worksheet. The announcement was made of confinement at hard labor "for six months." However, the voting members did not clearly mark their worksheet, which now reads:

to be confined at hard labor for 6 (days) (months) (~~years~~).

We find no error. The sentence announced by the president was legal and unambiguous. Any doubt concerning the worksheet itself was clarified by the announcement of sentence, which was crystal clear, and which prevails over the marks on the worksheet furnished the members to use in deliberations.[5] See *United States v. Walker*, 9 M.J. 892 (A.F.C.M.R.1980), and *United States v. Johnson*, 13 U.S.C.M.A. 127, 32 C.M.R. 127 (1962).

■ Reassessing the sentence in light of the error discussed, we find the sentence nonetheless appropriate.

The findings of guilty and the sentence are

AFFIRMED.

MILES, Senior Judge and MILLER, Judge, concur.

5. No other member objected or corrected the president when he announced a sentence including six *months'* confinement.